# EXHIBIT 2

STATE OF NORTH CAROLINA      IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
DURHAM COUNTY      CASE NO._____

BAHAR LEVENTOGLU,

    Plaintiff,

    v.

DUKE UNIVERSITY,

    Defendant.

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

NOW COMES Plaintiff Bahar Leventoglu and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Bahar Leventoglu is a female, first-generation immigrant and resident of Durham, Durham County, North Carolina.

2. Defendant Duke University is a domestic non-profit corporation organized and existing under the laws of the State of North Carolina with its principal place of business at 310 Blackwell Street, Fourth Floor, Durham, North Carolina 27701. At all relevant times, Defendant was an employer of Plaintiff and regularly employed more than 500 employees.

3. This Court possesses personal jurisdiction over the Defendant pursuant to N.C. Gen. Stat. § 1-75.4. The acts and omissions giving rise to the claims herein occurred in North Carolina and Defendants have availed themselves of North Carolina law by regularly conducting business in this State. Subject matter jurisdiction is similarly proper.

4. Venue is proper in this Court pursuant to N.C. Gen. Stat. §§ 1-79 and 1-82.

**FACTUAL ALLEGATIONS**

5. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

1

## Plaintiff's Employment and Academic Background

6. Plaintiff is a female, first-generation immigrant from Turkey employed by Defendant as an Associate Professor in the Department of Political Science and the Department of Economics.

7. Plaintiff began working for Defendant in 2006 as an Assistant Professor with a joint appointment in the Political Science and Economics departments. Plaintiff was promoted to Associate Professor and received tenure in 2013.

8. From the outset of her employment, Plaintiff has been a professor in both the Department of Political Science and the Department of Economics, with the Department of Political Science serving as her primary department. Her role is divided roughly evenly between the two departments, she can vote in both departments, and she receives half of her salary from each department.

9. Dr. Leventoglu is active in both Political Science and Economics. Dr. Leventoglu's academic work is interdisciplinary in nature and combines elements of both fields. She teaches classes in both Political Science and Economics and she publishes academic papers in academic journals from both fields. Dr. Leventoglu also supervises PhD candidates writing their theses in both the Political Science and Economics departments.

## Duke's Promotion Process for Faculty

10. The promotion process for faculty members at Duke is set forth in Chapter 3 of the Duke Faculty Handbook ("DFH")[1].

11. The DFH sets forth the requirements for promotion from associate professor to full professor, noting that "[p]romotion to full professor should be reserved for those who have an academic record documenting a continuous high-quality performance level in at minimum two of the

---

[1] The DFH can be found online at https://policies.provost.duke.edu/docs/faculty-handbook.

2

following three required components of scholarly productivity--research, teaching, and service--together with a good performance record in the third required component." *Id*.

12. The first step in the promotion process involves the creation of an *ad hoc* committee to review the candidate's eligibility for promotion. The department chair selects the members and the dean approves them. *Id*.

13. The DFH notes the importance of selecting appropriate members for the *ad hoc* review committee. "When candidates hold secondary/joint appointments and/or participate in interdisciplinary activities beyond the primary department, it is expected that such other academic units will be asked to provide a statement for the dossier about the level and quality of the candidate's contribution there. Furthermore, the dean shall be actively involved in determining the membership of the faculty review committee so as to assure an informed evaluation of the candidate's disciplinary or interdisciplinary contributions." *Id*.

14. The second step in the promotion process is a vote by the faculty in the department, which "is made by secret unsigned ballot of tenured faculty members, consistent with the unit's procedure." *Id*.

15. If the department vote is favorable, "the chair shall forward the recommendation along with the complete dossier . . . of the candidate to the dean, and the dean, in turn, to the provost." *Id*.

16. At the third step in the promotion process, "[o]pinions from the chair and the dean will be added to the file, but even should such intermediate recommendations be negative, a dossier with a favorable recommendation from the unit must ultimately be forwarded to the provost." *Id*.

17. The fourth step in the promotion process is a review by the Advisory Committee on Appointment, Promotion, and Tenure ("APT Committee"), "a group that advises the provost" and is required to consider promotions to the rank of professor. *Id*.

18. The APT Committee "is charged with evaluating the dossiers forwarded to it" and "must then formulate its own recommendations for presentation to the provost." *Id*.

19. The fifth step in the promotion process involves a review of the candidate by the Provost to make a final decision regarding the candidate's promotion. *Id*.

20. If the APT Committee provides a negative recommendation, the Provost is charged with reviewing the candidate's dossier to ensure the candidacy was properly considered. *Id*.

21. The Provost is not required to follow the recommendation of the APT Committee, but must inform the committee in writing and indicate why they are acting against the recommendation. *Id*.

22. "If the provost intends to render a negative decision on a case already considered by the AP&T Committee . . . the provost will inform the candidate, the departmental chair, and the relevant dean." "The provost will also provide a copy of the official AP&T memo summarizing the case and the deliberations of the AP&T Committee." *Id*.

23. "When the provost's recommendation is favorable, the provost shall consult with the president. With the president's approval, the provost shall submit the recommendation to the Board of Trustees for final action." *Id*.

24. Finally, after being informed that the Provost intends to render a negative decision, "[a]n appeal of the provost's impending decision, from any or all of these three parties, may then be made within the following two weeks, submitted through the dean." "On the basis of this appeal, the provost may then either refer the case back to the AP&T Committee, including the

4

departmental appeal, and ask for reconsideration of its recommendation or make their decision without referral." *Id*.

### *Plaintiff is Denied Promotion to the Rank of Professor*

25. Dr. Leventoglu was considered for promotion to Professor in the Fall of 2022.

26. On November 1, 2022, an *Ad Hoc* Committee was formed to evaluate Dr. Leventoglu, consisting of four male professors: Emerson Niou, Professor of Political Science (who served as Committee Chair), Timur Kuran, Professor of Political Science and Gorter Family Distinguished Professor of Islamic Studies (among other titles), Joseph Grieco, Professor of Political Science, and Anirudh Krishna, Edgar T. Thompson Distinguished Professor of Public Policy with a secondary appointment as Professor of Political Science.

27. None of the members of the *Ad Hoc* Committee possessed the requisite academic background to properly evaluate Dr. Leventoglu's candidacy for promotion. Unlike when she was considered for tenure (which she received in 2013), no committee members possessed a background in her specialty.

28. Committee Chair Niou's background came the closest to being appropriate to evaluate Dr. Leventoglu, but even he expressed difficulty in analyzing her work. On November 2, 2023, Niou visited Dr. Leventoglu in her office, stated that her work was highly technical, and noted that he may need to seek her assistance in explaining her work to scholars outside her field on the *Ad Hoc* Committee. This communication was a violation of standard protocols and Dr. Leventoglu promptly informed the Department of this incident.

29. On February 10, 2023, the *Ad Hoc* Committee issued its report recommending against promotion of Dr. Leventoglu.

30. On February 24, 2023, the *Ad Hoc* Committee's report was presented to the Department of Political Science for review and a vote on Dr. Leventoglu's candidacy.

31. The Department voted to recommend Dr. Leventoglu for promotion and rejected the *Ad Hoc* Committee's recommendation.

32. Pablo Beramendi, Chair of the Department of Political Science, also endorsed Dr. Leventoglu's candidacy for promotion.

33. Dr. Leventoglu's candidacy was subsequently considered by the Dean, who did not recommend her for promotion.

34. On April 12, 2023, the Provost and APT Committee were presented with the recommendations of the Department, Dean, and *Ad Hoc* Committee.

35. On May 26, 2023, Gary Bennett, Dean of Trinity College, informed Dr. Leventoglu that, after reviewing her candidacy, the APT Committee recommended against promotion, and her promotion had been denied.

36. The APT Committee evaluated Dr. Leventoglu's candidacy on the three criteria identified by the DFH for promotion to professor—service, research, and teaching. The APT Committee determined that Dr. Leventoglu's "service record is excellent; [her] research record is good, but not yet excellent; and [her] teaching record is not excellent."

37. On June 7, 2023, Dr. Leventoglu appealed the decision to the Provost outlining the errors in the process and why her candidacy was not given proper consideration.

38. On June 9, 2023, Department Chair Beramendi wrote a letter to the Provost in support of Dr. Leventoglu's promotion and appeal, identifying why the review of her candidacy was flawed and why she was deserving of promotion.

39. Dr. Leventoglu's and Department Chair Beramendi's appeals outlined why Dr. Leventoglu's record of service, teaching, and research qualified her for promotion. The APT Committee ignored Dr. Leventoglu's joint appointment with the Economics Department and her

6

interdisciplinary research. Dr. Leventoglu's research record is superior to that of three male colleagues who were promoted to full professors of economics during the same time period. Dr. Leventoglu also taught several courses which were known to be difficult (which has a negative impact on student scores) and the APT Committee did not consider this in evaluating her teaching scores. As Department Chair Beramendi noted, her teaching scores were on par with historical averages for the courses she taught despite the APT Committee's conclusion that her scores were low. At least two of the male economics professors who were promoted also had scores which were similar to historical averages for the courses they taught or were below such averages. Upon information and belief, one or more of the male economics professors, who were treated more favorably than Dr. Leventoglu is non-Turkish and/or of American national origin.

40. On June 26, 2023, Interim Provost Jennifer Francis denied Dr. Leventoglu's appeal.

41. On October 26, 2023, Dr. Leventoglu filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") alleging discrimination based upon sex and national origin and naming Defendant as Respondent.

42. On October 3, 2024, the EEOC issued Plaintiff a Notice of Right to Sue ("NRTS") entitling her to bring the instant action.

43. As a result of the discrimination that Dr. Leventoglu was subjected to, she has suffered and continues to suffer emotional distress and economic damages.

**FIRST CLAIM FOR RELIEF**
**Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e–2**

44. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

45. At all times relevant to this Complaint, Defendant employed at least fifteen (15), and over five hundred (500), employees.

46. Plaintiff was qualified for the position of Professor and was meeting Defendant's legitimate expectations for her position of Associate Professor at the time she applied for promotion.

47. Plaintiff is a woman and member of a protected class.

48. The actions of Defendant, as set forth herein, constitute discrimination against Plaintiff on the basis of her sex in the denial of her promotion to Professor.

49. Plaintiff was denied promotion by Defendant because of her sex.

50. Defendant treated Plaintiff differently than male candidates being evaluated for promotion to Professor in its evaluation of her candidacy and in denying her promotion.

51. Defendant intended to, and did, illegally discriminate against the Plaintiff on the basis of her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

52. Plaintiff exhausted all available administrative remedies and conditions precedent prior to filing this claim, including filing a claim with the EEOC and receiving a NRTS from the same.

53. Plaintiff is entitled to all of her benefits of employment, including, but not limited to back pay, front pay, health insurance, life insurance, retirement benefits, and other benefits.

54. Plaintiff is entitled to recover compensatory damages and punitive damages as provided by the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*, as amended by the Civil Rights Act of 1991.

55. Plaintiff is entitled to recover reasonable attorney's fees, the costs and expenses of this action, and such interest as may be allowed by law.

56. As a result of Defendant's conduct, Plaintiff has suffered financial damage in an amount to be determined at trial, but in any case in excess of Twenty-Five Thousand Dollars ($25,000).

## SECOND CLAIM FOR RELIEF
**National Origin Discrimination in Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e–2**

57. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

58. At all times relevant to this Complaint, Defendant employed at least fifteen (15), and over five hundred (500), employees.

59. Plaintiff was qualified for the position of Professor and was meeting Defendant's legitimate expectations for her position of Associate Professor at the time she applied for promotion.

60. Plaintiff is a foreign-born Turkish person and member of a protected class.

61. The actions of Defendant, as set forth herein, constitute discrimination against Plaintiff on the basis of her national origin in the denial of her promotion to Professor.

62. Plaintiff was denied promotion by Defendant because of her national origin.

63. Defendant treated Plaintiff differently than non-Turkish candidates being evaluated for promotion to Professor in its evaluation of her candidacy and in denying her promotion.

64. Defendant intended to, and did, illegally discriminate against the Plaintiff on the basis of her national origin, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

65. Plaintiff exhausted all available administrative remedies and conditions precedent prior to filing this claim, including filing a claim with the EEOC and receiving a NRTS from the same.

66. Plaintiff is entitled to all of her benefits of employment, including, but not limited to back pay, front pay, health insurance, life insurance, retirement benefits, and other benefits.

67. Plaintiff is entitled to recover compensatory damages and punitive damages as provided by the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*, as amended by the Civil Rights Act of 1991.

68. Plaintiff is entitled to recover reasonable attorney's fees, the costs and expenses of this action, and such interest as may be allowed by law.

69. As a result of Defendant's conduct, Plaintiff has suffered financial damage in an amount to be determined at trial, but in any case in excess of Twenty-Five Thousand Dollars ($25,000).

**THIRD CLAIM FOR RELIEF**
**Violation of the Civil Rights Act of 1866**
**42 U.S.C. § 1981**

70. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

71. Plaintiff was qualified for the position of Professor and was meeting Defendant's legitimate expectations for her position of Associate Professor at the time she applied for promotion.

72. Plaintiff is a foreign-born Turkish person and member of a protected class.

73. Plaintiff was denied promotion by Defendant because of her race and national origin.

74. In refusing to promote Plaintiff and discriminating against her because of her race and national origin, Defendant discriminated against Plaintiff in the making of a contract because of her race and national origin.

75. Defendant treated Plaintiff differently than candidates who were White, of a different race than Plaintiff, and/or non-Turkish candidates being evaluated for promotion to Professor in its evaluation of her candidacy and in denying her promotion.

76. By their conduct, Defendant intentionally deprived Plaintiff of the same rights enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of their contractual employment relationship with Defendant.

77. Defendant maliciously or with reckless indifference violated Plaintiff's right to be free from racial and national origin discrimination in the workplace, entitling Plaintiff to punitive damages.

78. Plaintiff is entitled to recover compensatory damages, reasonable attorney's fees, the costs and expenses of this action, and such interest as may be allowed by law.

79. As a result of Defendant's conduct, Plaintiff has suffered financial damage in an amount to be determined at trial, but in any case in excess of Twenty-Five Thousand Dollars ($25,000).

## FOURTH CLAIM FOR RELIEF
### Breach of Contract

80. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

81. Dr. Leventoglu had a binding contract with Defendant for her employment.

82. Dr. Leventoglu's contract with Defendant expressly or impliedly incorporated the promotion procedures outlined in Chapter 3 of the DFH.

83. Defendant's prior dealings with Dr. Leventoglu and others demonstrate that the promotion procedures outlined in the DFH are intended to be incorporated in the employment contracts Defendant enters into with its faculty members including Dr. Leventoglu.

84. Defendant promised, explicitly or impliedly, to adhere to the promotion procedures outlined in the DFH when considering candidates for promotion to the rank of Professor.

85. Defendant breached the terms of its contract with Plaintiff, by and through the following:

    a. Defendant did not appoint appropriate members to the *Ad Hoc* Committee;

    b. Defendant appointed members to the *Ad Hoc* Committee who were not suited to evaluate Plaintiff;

    c. Defendant did not account for Plaintiff's joint appointment and interdisciplinary work in evaluating her for promotion;

    d. Defendant failed to follow its own policies for evaluating candidates for promotion who hold joint appointments and/or perform interdisciplinary work;

    e. Defendant denied Plaintiff's promotion despite meeting the requirements set forth in the DFH;

f.  Defendant evaluated Plaintiff differently from other candidates for promotion despite the policy's implication that it will be uniformly applied;

   g.  Defendant failed to consider Plaintiff's appeal of her promotion denial;

   h.  Defendant failed to abide by the promotion requirements set forth in Chapter 3 of the DFH; and

   i.  Defendant failed to consider Plaintiff's candidacy in good faith.

86. As a result of Defendant's breach of contract, Plaintiff has incurred damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays the Court for judgment as follows:

a. That all matters so triable be tried before a jury;

b. That Defendant shall compensate Plaintiff for her compensatory damages of more than Twenty-Five Thousand Dollars ($25,000), in an amount to be determined at trial by the finder of fact;

c. For punitive damages in an amount calculated to punish Defendant and deter similar future conduct;

d. For a judgment finding that Defendant's employment practices described herein are unlawful;

e. Pre- and post-judgment interest as provided by law;

f. The costs of this action;

g. Plaintiff's attorneys' fees; and

h. Such other and further relief as the Court may deem just and proper.

12

This, the 30th day of December, 2024.

                                        **KORNBLUTH GINSBERG LAW GROUP, P.A.**
                                        *Attorneys for Plaintiff*

                                        Michael A. Kornbluth
                                        N.C. Bar No. 27928
                                        Email: mkornbluth@KGLawNC.com
                                        Andrew W. Legg
                                        N.C. Bar No. 56351
                                        Email: alegg@KGLawNC.com
                                        3400 Croasdaile Drive, Suite 300
                                        Durham, North Carolina 27705
                                        Telephone: (919) 401-4100
                                        Facsimile: (919) 401-4104